UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOVER CHEMICAL CORPORATION, | ) | CASE NO.  5:10cv1700 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE SARA LIOI |
| | ) | |
| UNITED STATES FISH AND WILDLIFE | ) | |
| SERVICE, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | [Resolving Docs. 17, 18] |

This matter comes before the Court on the motions of Defendants, Chris Korelski, Director of the Ohio Environmental Protection Agency ("OEPA") and the United States Fish and Wildlife Service ("USFWS"), to dismiss. (Docs. 17, 18, respectively.) The matter is ripe for disposition. For the reasons set forth herein, Defendants' motions are GRANTED.

**I. Background**

Plaintiff Dover Chemical ("Dover") has operated a chemical plant in Dover, Ohio, since 1949.[1] Dover admits that it has released chemicals into the surrounding environment as a result of its operations. These releases have become the subject of an environmental assessment and cleanup effort labeled the Sugar Creek Valley Natural Resource Damage Assessment ("NRD").[2] Dover contends that all of the releases occurred "wholly before December 11, 1980." Am. Compl. at ¶ 7.

---

[1] The facts presented in this Opinion are taken from Dover's complaint.
[2] Defendant USFWS has thoroughly set forth the steps of the NRD process in its motion, which the Court will not reiterate here except to say that the NRD process has four steps, as enumerated in 43 C.F.R. § 11.13: (1) preassessment; (2) assessment planning; (3) assessment; and (4) post-assessment.

An Administrative Order by Consent ("AOC") was entered into among Dover, the OEPA and the United States Environmental Protection Agency ("USEPA") in each of the years 1981, 1988, 1998, and 2000. In the AOCs, Dover agreed to investigate the areas adjacent to its plant and to conduct remediation. Dover asserts that it is still in compliance with the 1988, 1998, and 2000 AOCs, under the supervision of the OEPA and USEPA, but that neither organization has decided how it proposes to remediate the problem of groundwater contamination in the area.

In January 2010, the OEPA and the Department of the Interior ("DOI"), of which USFWS is a division, began communicating with Dover regarding an NRD Assessment on the property around Dover's plant. In a letter dated January 12, 2010, the two agencies proposed that Dover participate in an NRD assessment. Included was a copy of the preassessment screen showing that there was a likelihood of success if they proceeded with the NRD claim under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* The screen listed the chemical names of the hazardous substances released in the area. It determined that the releases of those substances did not occur wholly before December 12, 1980, which is the Statute of Limitations under CERCLA (*see* 42 U.S.C. § 9607(f)(1)), nor were the releases excused by any other exception under the statute. In the NRD proceedings, the OEPA and the USFWS served as the state and federal National Resource Trustees (collectively "Trustees"), respectively, as required under DOI regulations.

Because the January 12, 2010 letter did not name any other Potentially Responsible Parties ("PRP"), Dover requested that other PRPs be identified so that they could contribute to the cost of the NRD investigation. Dover first made this request at a May 5, 2010 meeting with the Trustees. That request was rejected by letter dated May 13, 2010, in which the Trustees indicated that they were unable to identify other PRPs until they had completed

additional sampling of the region. Dover represents that on May 17, 2010, it received "itemized invoices for approximately $80,000 in NRD-related costs."[3] Am. Compl. at ¶ 12.

Dover states that on May 19, 2010 and June 4, 2010, the Trustees provided Dover with drafts of the NRD Assessment Plan for the area then known as the Sugar Creek Valley Assessment Area. Dover was still the only PRP identified. This was followed by the presentation of a draft Funding and Participation Agreement ("FPA") on July 15, 2010, once again naming only Dover as the PRP. Under the terms of the FPA, Dover could not withdraw from the agreement without the consent of the Trustees.

In a letter dated July 21, 2010, Dover made one additional attempt to ask the Trustees to identify other PRPs and once again asserted that the releases in question had occurred wholly before December 11, 1980. The Trustees acknowledge Dover's request and its argument by a letter dated July 29, 2010. They then rejected both. Dover asserts that this and other disagreements among the parties create a justiciable dispute that is ripe for this Court's disposition.

In its complaint, Dover asserts four causes of action, as follows:

1. Declaratory Judgment action under § 107(f)(1) of CERCLA, to declare that the releases occurred wholly prior to December 11, 1980, which is the applicable statute of limitations;

2. Declaratory Judgment action under § 113(g) of CERCLA, to declare that the Trustees have failed to identify a remedy for the allegedly actionable releases as require by statute;

3. Declaratory Judgment action to declare that the actions taken by the Trustees are precluded by the 1988 AOC, and more specifically by the covenant not to sue contained therein;

---

[3] Dover cites Exhibit C to its complaint, which consists of several sheets of itemized cost breakdowns. Those sheets contain no indication that the amounts shown are currently due and owing. No cover sheet is included in the exhibit that would reflect the actions the Trustees intended Dover to take upon receipt of the breakdowns.

3

4. Declaratory Judgment action under § 107(j) of CERCLA, that Dover's releases are federally permitted, which creates an exception to liability.

The Trustees have moved to dismiss all of Dover's claims. Mr. Korleski, acting as the named agent of the OEPA, argues in his motion to dismiss that Dover's claims are barred by the Eleventh Amendment, which grants to the states immunity from suit, and the complaint should therefore be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, he argues that complaint should be dismissed under Rule 12(b)(6) because the matter is not ripe for disposition.

The USFWS has also moved under Rules 12(b)(6) and 12(b)(1) to dismiss Dover's complaint, stating reasons that are nearly identical to those argued by the OEPA. First, it argues that the Court lacks subject matter jurisdiction both because the federal government has not waived its sovereign immunity and, even if there is a waiver, the action taken thus far by the USFWS does not constitute a final agency action. Second, it argues that, because the action taken by the USFWS is not a final agency action, the matter is not ripe for this Court's review.

## II. Legal Standard

There are two general categories into which Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994).

> Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974). A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

4

*United States v. Ritchie*, 15 F.3d at 598.

In this instance, Plaintiff has stated in its complaint its purported basis for subject matter jurisdiction. Defendants, however, contend that the bases asserted by Plaintiff do not support a claim for this Court's jurisdiction, and that no statute or precedent permits jurisdiction over Plaintiff's claims. This attack is a factual attack, "challeng[ing] [. . .] the factual existence of subject matter jurisdiction." *Id.* at 598.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pled allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level [...]." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the

5

*Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

## III. Analysis

"A federal court is not a general repository of judicial power; thus, it must satisfy itself that it has subject-matter jurisdiction over the dispute before it addresses the merits of the claims." *Gross v. Houghland*, 712 F.2d 1034, 1036 (6th Cir. 1983) (citing *Memphis Am. Fed. of Teachers Local 2032 v. Bd. of Educ.*, 534 F.2d 699, 701 (6th Cir. 1976)). A federal court may not proceed to the merits of a case before it has determined that is has subject matter jurisdiction. *Gross*, 712 F.2d at 1036. The parties in this matter have challenged both subject matter jurisdiction itself and the ripeness of the action. "Where claims are not ripe, federal courts lack subject matter jurisdiction and the complaint should be dismissed." *Tri-Corp Mgmt. Co. v. Praznik*, 33 Fed. App'x. 742, 745 (6th Cir. 2002) (citing *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992)). It is therefore immaterial which issue the Court addresses first, as both are issues of jurisdiction.

### A. Subject matter jurisdiction

Each defendant asserts that the governmental entity it represents has not waived its sovereign immunity such that Plaintiff may bring these claims. "The United States, as sovereign, is immune from suit save as it consents to be sued [. . .]." *United States v. Sherwood*, 312 U.S. 584, 586 (U.S. 1941) (citations omitted). "Sovereign immunity is jurisdictional in nature. Indeed the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "A waiver of the Federal Government's

sovereign immunity must be unequivocally expressed in statutory text, and will not be implied […]." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted).

In its complaint, Dover cites several statutes that it claims operate as a waiver of the United States' sovereign immunity. First, it cites the Administrative Procedures Act, 5 U.S.C. §§ 702-704 ("APA") and CERCLA § 120(a)(1). It also cites the general federal question jurisdiction statute at 28 U.S.C. § 1331; the jurisdictional statute addressing suits in which the United States is a defendant, namely 28 U.S.C. § 1346; the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"); and CERCLA § 113(b). USFWS argues that none of these statutes operates to confer jurisdiction on this Court over Dover's claims because none of the statutes expressly waives the federal government's sovereign immunity.

The federal jurisdictional statutes Plaintiff has cited, 28 U.S.C. §§ 1331 and 1346, discuss federal question jurisdiction and suits in which the federal government (or an entity thereof) is a defendant. Neither addresses the issue of the waiver of sovereign immunity under CERCLA. The CERCLA statutes cited by Plaintiff do not do so either. Section 120(a)(1) requires compliance with CERCLA's provisions by the governmental entities operating under CERCLA, and it mentions the liability of those entities, but it makes no waiver of sovereign immunity such that the United States would be subject to suit in federal court for alleged non-compliance. Similarly, § 113(b)[4] establishes that suits under CERCLA are within the exclusive jurisdiction of the federal district courts. Nowhere does the provision indicate that suits by private individuals or entities against the federal government fall under that jurisdiction because the government has waived its immunity. As waiver of sovereign immunity must be express, the Court will not infer its jurisdiction from these statutory provisions.

---

[4] Section 113 of CERCLA—the section of the act devoted to civil proceedings—expressly limits federal jurisdiction of claims to those actions brought for the purpose of enforcement of the act. It does not provide for review of decisions that are not final. *See* 42 U.S.C. § 9613.

Plaintiff's attempt to rely upon the DJA, 28 U.S.C. § 2201, is likewise misplaced. The DJA provides for a federal court to issue a declaratory judgment "[i]n a case of actual controversy *within its jurisdiction*," 28 U.S.C. § 2201(a) (emphasis added), but in order for a case against a federal agency to be within the jurisdiction of the federal courts, the government must waive its sovereign immunity. It has not done so under CERCLA.

Finally, the APA provides that an agency action is subject to review if a person has suffered harm as a result of that action. 5 U.S.C. § 702. Review of the action, however, is expressly limited in § 704[5] by the requirement that the action be final and that there be no alternate adequate remedy for the review of the agency action. *See Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). The Supreme Court has held that courts must consider two factors in determining whether an agency action is final: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations and citations omitted).

Based upon the facts presented, the Court concludes that this agency action is not final. The record suggests that the Trustees have reached the conclusion of the "preliminary assessment" stage, and have presented to Dover a summation of costs incurred to this point. But, as USFWS notes in its motion, the letters the parties have exchanged have not indicated that the Trustees have reached any final decisions. Those letters only refer to the likelihood that a claim

---

[5] Section 704 states, in pertinent part, as follows:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

exists under CERCLA, and indicate that initial determinations have been made that the Trustees should proceed in their analysis of the land covered by the NRD.

Moreover, the exhibits attached to Dover's complaint also highlight the preliminary and ongoing nature of the actions of the Trustees: Each letter from the Trustees speaks about preliminary findings and further investigation (Docs. 1-3 (notification of an invitation to participate in NRD), 1-4 (response to Dover's inquiries indicating that further investigation was required), 1-9 (speaking prospectively of the completion of natural resources damage assessment)), while the other exhibits are, by their nature, preliminary. (Doc. 1-6, the "Draft Document for Public Comment"; Doc. 1-7, the Memorandum of Agreement for conducting the NRD assessment, labeled "FOR DISCUSSION PURPOSES ONLY.") There is simply no way to view the damage assessment as complete.

As to the second prong under *Bennett*, USFWS indicates that no liability has been assigned to Dover, no rights or obligations have been identified, and no penalties have been assessed. Dover contends, effectively, that no good can come of the steps the agency has taken thus far, and therefore it ought to be able to nip further agency actions in the bud before it faces actual penalties as a result of the agency's assessment. Dover can point to nothing, however, that constitutes an actual determination of liability, or a conclusion regarding rights and obligations. Because no final agency determination has been made, the APA does not confer upon this Court jurisdiction over Plaintiff's complaint with respect to the preliminary actions of the agency.

The Court also finds that it lacks jurisdiction over Dover's claims against the OEPA.  The Supreme Court has held that the Eleventh Amendment protects a state from suit by its citizens. *Welch v. Texas Dep't of Highways & Public Transp.*, 483 U.S. 468, 472 (1987) (plurality) (citing *Hans v. Lousiana*, 134 U.S. 1, 10 (1890)). The courts may find that a waiver of

Eleventh Amendment immunity permits suit by private citizens against the state in the following contexts: first, where private litigants seek prospective injunctive relief against a state whose officers are charged with an ongoing violation of federal law, *see Ex parte Young*, 209 U.S. 123, 167 (1908); second, where a state waives its Eleventh Amendment immunity and consents to suit in federal court, *see Green v. Mansour*, 474 U.S. 64, 68 (1985); or third, where Congress abrogates a state's immunity through Section 5 of the Fourteenth Amendment, which allots to Congress the "power to enforce, by appropriate legislation" the Amendment's provisions. *See* U.S. Const. amend. XIV, § 5.

There is no basis for concluding from the allegations in Dover's complaint that the state has expressly waived its sovereign immunity in this matter. Further, there is no basis for concluding that Congress has abrogated the state's immunity under the Fourteenth Amendment. Dover does not argue that either of these waivers of Eleventh Amendment immunity applies here.

Instead, Dover argues that *Ex parte Young* applies in this matter, and that a state official—namely Mr. Korleski, whom Dover has named in his capacity as Director of the OEPA—is committing an ongoing violation of federal law. The holding in *Ex parte Young* permits an action for prospective injunctive relief against a state official who is acting in violation of federal law in performing a discretionary act, in order to prevent the further violation of federal law.[6] *Ex parte Young*, 209 U.S. at 159-60. Dover argues that, because it has named Mr.

---

[6] The Fifth Circuit Court of Appeals has explained the doctrine of *Ex parte Young*—which they note is frequently misunderstood—as follows:

Korleski rather than the OEPA in its complaint, in which it seeks prospective relief in the form of a declaratory judgment to prevent alleged violations of CERCLA, the doctrine of *Ex parte Young* operates to destroy immunity under the Eleventh Amendment.

Mr. Korleski, on behalf of the OEPA, responds that simply naming him rather than the OEPA does not make this suit any less an action against the OEPA as a state agency, in part because the Supreme Court has recognized that the state (or, in this instance, the state agency) has a continuing interest in the litigation even though the individual director has been named. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269-70 (1997). Furthermore, Dover has made no allegation that Mr. Korleski has personally violated federal law, nor has it requested any relief with respect to Mr. Korleski personally. Instead, the violations alleged by Dover would have been committed by the OEPA as the named state trustee, and any relief sought relates to the OEPA in that capacity.

The Court finds that Dover has not set forth a basis for jurisdiction over the state in this matter. Simply naming the director of the OEPA does not make this an action that falls under the sovereign immunity exception of *Ex parte Young*, nor has Dover identified any other

---

The *Ex parte Young* fiction is that acts by state officials which are contrary to federal law cannot have been authorized or be ratified by the state; thus, illegal acts by state officials cannot be considered acts done under the state's authority. Therefore, any suit seeking to enjoin wrongful- and *ipso facto* unauthorized-acts by state officials is not a suit against the state; and the federal court's injunction of those wrongful acts is not a judgment against the state itself. The "fiction" of *Ex parte Young* is its underlying image of the state as a discrete entity separate from its agents, ready and willing to obey federal law under the Supremacy Clause but thwarted by the bad acts of its recalcitrant officials; whatever the power of this image, the fiction has long been thought necessary to preserve the supremacy of federal law. *Ex parte Young* creates the well-recognized irony that an official's unconstitutional conduct constitutes state action under the Fourteenth Amendment but not the Eleventh Amendment.

*Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988) (internal quotations and citations omitted).

basis of jurisdiction.[7] Further, were there an argument for the waiver of state immunity with respect to this claim under *Ex parte Young* or any other doctrine, it would be made moot by the fact that this action is not ripe, as the Court will now discuss.

**B. Ripeness**

Both the USFWS and the OEPA have argued in their respective motions that Dover's claims are not ripe for disposition.

> Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). "Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (citing *Abbott Labs.*, 387 U.S. at 149). As Dover has noted in its response in opposition to USFWS's motion, the Sixth Circuit has adopted a three-part test for making ripeness determinations: "(1) the likelihood that the harm alleged a the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits." *Dealer Computer Servs. Inc. v. Dub Herring Ford*, 623 F.3d. 348, 351 (6th Cir. 2010).

---

[7] In its response in opposition to the OEPA's motion, Dover has attempted to identify several instances of alleged violations of federal law—namely CERCLA provisions with which it believes the OEPA has not complied—in support of its claim that a state official is violating federal law, including the fact that there is no adequate state forum for resolution of Dover's claims. For the reasons set forth in this Court's discussion of the ripeness issue, it is not necessary to examine each of these provisions and the OEPA's alleged violations, or the arguments about Dover's remedy. The Trustees have not issued a final decision in this matter. Any question of Dover's remedy is likewise not ripe for this Court's analysis.

The Sixth Circuit has also acknowledged that the distinction between its test and the two-part test set forth by the Supreme Court is one "without a difference." *Id.* at 355.

> The Supreme Court has stated that
>
> > [a]bsent a statutory provision providing for immediate judicial review, a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [APA] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.

*Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (alterations, quotation marks omitted)). It stands to reason that if a court does not have jurisdiction over a matter because the underlying agency action is not final, the ripeness of the action may also be called into question, a principle that is re-enforced by the similarity between the *Bennett* standard for a final agency action and the standard for ripeness in an agency context.

In point of fact, the Sixth Circuit has expressly held that there is no pre-enforcement review of constitutional claims under CERCLA. In *Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 292 (6th Cir. 1991), the court rejected the plaintiff's contention that the EPA's actions threatened to deprive it of property rights without due process of law. Citing its earlier decision in *J.V. Peters & Co. v. EPA*, 767 F.2d 263 (6th Cir. 1985), the court noted that a plaintiff has "no cause of action to challenge EPA's actions under CERCLA before EPA sued for liability under [CERCLA § 107(a)]." *Barmet*, 927 F.2d at 292. As the Sixth Circuit has found

that a plaintiff may not raise pre-enforcement constitutional challenges, it follows that a plaintiff cannot raise procedural challenges prior to the EPA's enforcement actions. [8]

For all of the reasons set forth above in the Court's discussion of its subject matter jurisdiction relative to the motion of USFWS, there is no final agency decision at issue in this matter. Instead, a series of preliminary steps have been taken by the Trustees to conduct the studies and analyses necessary to arrive at a decision, which requires that they assess the damage, identify the responsible parties, and determine the dates of releases. Without an actual decision from the Trustees the Court is in no position to proceed with this matter or to rule on the issues—which at this preliminary stage are themselves undefined.

For instance, Dover insists that its releases did not occur after December 11, 1980, and that therefore recovery claims are barred by the applicable statute of limitations. *See* am. Compl. at ¶ 15. The truth of that assertion is not at all clear at this point in the proceedings. When and if it is made clear, Dover would undoubtedly assert this as a defense to the payment of any damages that are traceable to releases made prior to the statute of limitations. Until that time, the Court is not in a position to decide the issue. Further development of this and other issues is

---

[8] The District Court for the Western District of Washington issued an opinion in which it clearly stated that there is no pre-enforcement review of administrative actions under CERCLA that did not constitute final agency decisions. *Pacific Resins and Chems. Inc. v. United States of America*, 654 F.Supp. 249 (W.D. Wash. 1986). In that decision, the district court cited a number of decisions that had reached the same conclusions. While neither the district court's decision nor the decisions it cited are binding on this Court, they are instructive:

> [A]ppellate and district court decisions addressing the issue have concluded there is no pre-enforcement review under CERCLA. *United States v. Outboard Marine Corp.*, 789 F.2d 497, 505 (7th Cir.1986) (no judicial review even after adoption of Record of Decision), *Wheaton Indus., Inc. v. United States*, 781 F.2d 354, 356 (3d Cir.1986); (no judicial review of declaratory judgment action seeking control of remedial study until cost recovery action is filed); *Lone Pine Steering Comm. v. United States*, 777 F.2d at 886 (no judicial review until EPA files suit to recover costs); *B.R. McKay & Sons, Inc. v. United States*, 633 F.Supp. 1290 (D.Utah 1986) (no judicial review of *final* EPA action for a declaration of non-liability or liability under CERCLA prior to a cost recovery action); *Solid State Circuits, Inc. v. EPA*, 23 Env't Rep.Cas. (BNA) 1758 (W.D.Mo. Nov. 1, 1985) (no subject matter jurisdiction under CERCLA for judicial review prior to CERCLA cost recovery action).

*Pacific Resins*, 654 F.Supp. at 253-54.

essential for the Court's review of this matter, and until the issues are developed, this matter is not fit for judicial decision. *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 812 (in which the action before the Court was a final agency action, but the Court required further factual development to decide the issues).

As to the other two factors, the Court does not find that Dover will be harmed by delay. As the Court noted above, none of the letters submitted by Dover as attachments to the complaint indicate that penalties or other indications of liability have been assessed or are imminently being required of Dover. The potential hardships Dover does face as a result of the alleged rule-bending by the Trustees (if any) are likely to be those that can be challenged when and if the Trustees bring an enforcement action.

Furthermore, the Court's interference at this stage of the investigation would result in government expenditures in order to defend against an action that is speculative and lacks both concrete factual allegations and actual damages.[9] Dover has argued in its response in opposition to the USFWS motion that the Trustees are likely to waste resources by pursuing this NRD assessment. Given the lack of concrete claims at this juncture, however, the Court can only foresee that pursuit of this action by Dover will result in expenditures to defend the suit and later expenditures to clarify the issues by further research or investigation of the agency action.

The Court is not insensitive to Dover's concerns, which largely revolve around its insistence that it is not liable for damages to the property in question either because it was federally permitted to release the substances at issue or is otherwise excused from liability, or

---

[9] One argument advanced by Dover is that the rule to which it believes the Trustees have not strictly adhered (namely CERCLA §§ 113(g), which requires that the Trustees select a remedy prior to the recovering NRD damages or investigation expenses) would limit expenses were the Trustees to adhere to it strictly, because it would prevent expenditures on an assessment that is unlikely to result in liability. It is worthy of note, however, that Dover's proposed means of remedying the Trustees' alleged rule-bending is to require the respective governmental agencies to expend funds to defend their practices and methods before expending funds to complete the assessment.

because it released those substances prior to the statute of limitations for CERCLA actions. It is also aware of Dover's concern that an agency decision upon completion of the assessment will have the force and effect of a rebuttable presumption. *See* Doc. 22 at 16; 43 C.F.R. § 11.91. Unfortunately for Dover, these agency proceedings are still sufficiently preliminary that the Court lacks jurisdiction over them and cannot decide the issues Dover raises, either factually or procedurally.

## IV. Conclusion

For the reasons set forth herein, the Court finds that it lacks subject matter jurisdiction over Defendants on Dover's claims. The motions of Defendants USFWS and OEPA to dismiss Dover's complaint are GRANTED, and this matter is DISMISSED.

**IT IS SO ORDERED**.

Dated: June 17, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**